OPINION
{¶ 1} On March 11, 2002, Cassandra R. Sears was indicted on a single count of forgery and a single count of possessing criminal tools. She entered a plea of not guilty at arraignment and counsel was appointed to represent her.
 {¶ 2} The case proceeded to a jury trial in September 2002, and Ms. Sears was found guilty of both charges. She was sentenced to a term of eleven months of incarceration on each charge with the sentences to run concurrently.
 {¶ 3} Ms. Sears now appeals the judgment and sentence of the trial court, assigning two errors for our consideration:
 {¶ 4} "1. The court errored [sic] b[y] not following the mandates of Ohio Revised Code 2929.19(A)(1), (B)(2)(a) and (D) with regard to sentencing in this matter.
 {¶ 5} "2. The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence."
 {¶ 6} Addressing the second assignment of error first, on November 30, 2001, Cassandra R. Sears entered the Kroger Store at 1630 Morse Road in Columbus, Ohio and attempted to cash a check. Employees at Kroger noticed some irregularities with the routing number on the check and began investigating whether or not the check was forged. While they were investigating the check, Ms. Sears left the store.
 {¶ 7} Kroger employees found Ms. Sears in the parking lot and, with the help of a special duty police officer, they returned her to the store. Ms. Sears denied that anything was wrong with the check. She had earlier provided her driver's license to establish her identity when she attempted to cash the check, but claimed she had gone to her car to obtain additional portions of the check.
 {¶ 8} At trial, the administrator of Crown Pointe Care Center, whose payroll check was purportedly in the possession of Ms. Sears, testified that Ms. Sears was not an employee of Crown Pointe Care Center. The administrator pointed out several problems with the check which clearly demonstrated that the check was not a valid payroll check. The administrator testified that the care center did not use temporary services and that all regular employees had their pay processed through ADP. Regular employees had their checks marked with an ADP logo.
 {¶ 9} Cassandra Sears testified on her own behalf at trial. She acknowledged that she used her driver's license to help her cash a check in the amount of $493.75. Ms. Sears claimed she did not know the check was a counterfeit check even though the name of her claimed employer was misspelled and the address for the care center was also misspelled.
 {¶ 10} Ms. Sears acknowledged that she had a prior criminal record of aggravated trafficking in drugs, failure to appear on a recognizance bond and attempting to pass a bad check. Ms. Sears claimed that she had worked at Crown Pointe Care Center for two weeks as a receptionist and as a data-entry person. Ms. Sears denied that she was trying to defraud anyone when she tried to cash the check.
 {¶ 11} We turn now to the similar, yet distinct, standards by which we are bound in reviewing the second assignment of error, which challenges both the sufficiency of the evidence, and the manifest weight of the evidence.
 {¶ 12} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. In Thompkins, the court explained at length the distinctions between the two standards:
 {¶ 13} "With respect to sufficiency of the evidence, `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Robinson (1955), 162 Ohio St. 486 * * *. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process." Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, citing Jackson v. Virginia (1979), 443 U.S. 307 * * *."
 {¶ 14} When reviewing the sufficiency of the evidence to support a conviction, an appellate court must review the record to determine "whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. In Jenks, the Supreme Court set forth the stringent standard of review to be applied in a sufficiency analysis:
 {¶ 15} "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 16} In contrast, as explained in Thompkins, supra, a manifest weight analysis is slightly different:
 {¶ 17} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487 * * *. Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's, supra, at 1594.
 {¶ 18} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42 * * *. See, also, State v. Martin (1983),20 Ohio App.3d 172, 175 * * * (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')."
 {¶ 19} Pursuant to the foregoing standards, we examine the record in a light most favorable to the prosecution to determine if the prosecution sufficiently proved beyond a reasonable doubt each element of the offenses charged or, alternatively, whether the jury "lost its way" in convicting appellant such that a manifest miscarriage of justice occurred.
 {¶ 20} Applying these standards to the testimony presented at trial, the jury verdicts were both supported by the sufficiency of the evidence and in accord with the manifest weight of the evidence. The jury could readily have found that Ms. Sears attempted to cash a check she knew was a counterfeit check with a purpose to defraud. The jury also could readily have found that Ms. Sears used her driver's license and the counterfeit check in the process of committing the forgery. Forgery is defined in R.C. 2913.31(A) as follows:
 {¶ 21} "No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
 {¶ 22} "(1) Forge any writing of another without the other person's authority;
 {¶ 23} "(2) Forge any writing so that it purports to be genuine when it actually spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what in fact was the case, or to be a copy of an original when no such original existed;
 {¶ 24} "(3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged."
 {¶ 25} Possessing criminal tools is defined in R.C. 2923.24(A) in the following terms:
 {¶ 26} "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."
 {¶ 27} The elements of both statutes were proved by the evidence presented at trial. The second assignment of error is overruled.
 {¶ 28} Addressing the first assignment of error, the trial court ordered that a pre-sentence investigation be conducted. The trial court also assigned new counsel to represent Ms. Sears after she expressed displeasure with the lawyer who conducted her trial.
 {¶ 29} At the sentencing hearing, Ms. Sears expressed claims of bias, discrimination, conspiracy against her and other related charges. Ms. Sears claimed that she had been wrongfully incarcerated before. She complained about several other aspects of her life in a rambling statement which consumes over five pages of transcript. When the trial judge attempted to steer the proceedings to legal matters he had to address, Ms. Sears interrupted to ask him if he was acting out of bias and prejudice. The judge then finished the sentencing proceedings with additional explanation of his sentence.
 {¶ 30} The trial judge allowed an extended allocution by Ms. Sears, so compliance with R.C. 2929.19(A)(1) was demonstrated.
 {¶ 31} The trial court noted that Ms. Sears had been to prison before and that when probation had been attempted before, the probation had not been successfully completed. The judge also expressed his opinion that a lesser sentence would demean the seriousness of the felony offenses committed. Compliance with R.C. 2929.19(B)(2)(a) was demonstrated.
 {¶ 32} The same comments which applied to R.C. 2929.19(B)(2)(a) were also applicable to R.C. 2929.19(D). Ms. Sears had been unsuccessful when community control had been attempted before. She had been incarcerated before. She had had disciplinary problems when incarcerated. Her extended discourse at the sentencing indicated that she blamed virtually everyone but herself for the fact that she had two more felony sentences to face. The record fully supports the two counts finding that early release would not be appropriate.
 {¶ 33} In short, the trial court's sentences of eleven months to be served concurrently was given in accord with the spirit of R.C. 2929.12, and in compliance with the terms of the statute. The first assignment of error is overruled.
 {¶ 34} Both assignments of error having been overruled, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT, J., and PETREE, P.J., concur.